## LOMAS & NETTLETON CO., TRUSTEE
## and PETER J. McINTYRE
### vs.
## CITY OF NEW HAVEN

Superior Court    New Haven County    File #49401
                                                          #49360

Present: Hon. ARTHUR F. ELLS, Judge.

Clark, Hall & Peck;
F. R. Goldman,                Attorneys for the Plaintiff.

David S. Rivkin,
  Corporation Counsel,        Attorney for the Defendant.

## MEMORANDUM FILED JUNE 18, 1936.

ELLS, J. These two cases present application for relief

from wrongful assessment, under **Section 1201 of the General Statutes,** as amended, and claim that the taxes laid on the respective properties were computed on assessments which under all the circumstances were manifestly excessive. The Lomas & Nettleton property is located on Whitney Avenue, and the McIntyre one on Chapel and Norton Streets in New Haven. Both are high-grade apartment houses; they are well located and in excellent condition.

We have here the culmination of a long dispute between Lomas & Nettleton and the New Haven Assessors, and in a certain sense these are test cases involving many other large apartment houses in that city. The problems faced by such owners on the one part, and municipalities on the other, during the depression, have been serious and difficult.

Owners could not sell at any price, and they were forced to operate at a devastating loss. Vacancies were the rule and not the exception. They were forced to drastically reduce rental prices, and if they secured tenants, more often than not they couldn't collect the rent. Few owners were able to avoid foreclosure.

Municipalities had their troubles, too. Income lessened; expense increased, due to relief needs. Assessments had to be reduced and tax collections have been slow. The assessors have apparently tried very hard to be fair, if these two cases are significant indications. They have made three substantial reductions on one of the properties, during the depression, and two on the other. Their attitude is well expressed by the testimony of the President of the Board, Mr. Bishop— "We have endeavored to do things for them at times, but they want more than we can do, that's all".

The fair and actual value, the sound value, of these properties is not to be found either at depression's bottom or prosperity's top. Both are to be considered. We have now reached an intermediate state. Quite obviously we have turned the much talked about corner, and are on our way up and out. General improvement in business is reflected in greatly improved conditions for apartment house owners. It is surprising to find opposing real estate experts agreeing on anything; almost startling to find the warring forces in this case in agreement that in New Haven, apartment houses— all of them,—are 98 per cent full. Values are increasing, rents are rising and collections are good.

Having stated the problem, and the conditions surrounding it, I now pass to specific consideration of these two cases. The quarrel is principally as to the buildings. The Norton Street property is assessed at $75,000. It is subject to a first mortgage to Lomas & Nettleton for $80,000, and they are in possession and control by virtue of an assignment of rents. The mortgage was placed in 1927 and was not for more than 60 per cent of the real value, their agent testified. That made a value of $133,000 or about $120,000 for the building. It was assessed at $100,000, and reduction during the depression brought it down to its present amount, $75,000.

It is now insured by Lomas & Nettleton for loss against fire for $95,000. These figures are sufficiently significant to warrant restatement in summarized form. Lomas & Nettleton holding a first mortgage of $80,000 on an apartment house whose tax assessment is $75,000 for the building and $11,625 for the land, have declared to the insurance companies that the building is worth $95,000, but at the same time make the claim to the assessors that it is worth only $49,000.

It seems a necessary conclusion either that Lomas & Nettleton intend to collect $95,000 in case of complete loss by fire or that they are wasting trust funds paying unnecessary premiums. It also follows that they really consider it worth what it is insured for. They then named their own fair value, and are off to a bad start in asking the court to very materially reduce their own valuation. However, I do not at all base my decision on these considerations, for they are not strictly relevant to the issue. I shall confine myself to the usual income, replacement and capitalization tests.

Value is a matter of opinion. It is based in part upon exact mathematical and scientific considerations, but that it finally becomes merely an expression of opinion is shown by the startlingly opposite conclusions reached by experts. They use the same basic figures as to income, but differ materially as to what income ought to be, now and in reasonably better times. They differ widely as to cost of reproduction, and produce interminable figures to support their differing conclusions. Any agreement by way of the capitalization method is wrecked by divergent views as to percentage of profit.

Without going into the voluminous testimony at length, I will state that in general I am inclined to follow Mr. Loeb's figures as being the most satisfactory on all points involved,

and to support his conclusion that the buildings are fairly assessed.

Considering briefly the standard "cost of replacement less deterioration" method, I find that plaintiff's figures are incomplete and inexact. Many necessary items were not included. On the other hand, depreciation figures are too high.

The experts agree as to the stabilized fair net income figures. They disagree heartily as to the interest rate which should be used as the measure. The actual rate as shown by the figures is close to $4\frac{1}{2}\%$. Mr. Loeb says $4\%$ is a reasonable return in these times; Mr. Horan thinks $6\%$ is necessary and Mr. Kelly $7\%$. Mr. Oviatt's figures support a $5\%$ return, which he considers reasonable.

Plaintiffs' very excellent brief vigorously attacks the four and five per cent opinion and points out that this is a speculative investment warranting a higher return. There is some force to it, but if this returns in fact a $4\frac{1}{2}\%$ income, because of the careful and skillful management for which Lomas & Nettleton are justly noted, it is sufficient, in these times of low returns on safe investments.

A net return to the owner (after paying the present tax) of four or five per cent is sufficient, if he gets it. The practical objection is that he has to pay more for mortgage money. This is a real criticism and casts some doubt on my conclusion insofar as this phase of the case is concerned. But the difference is not as great as is claimed, for the owner should receive a return only on his own investment and not on the total of his investment plus the mortgagee's investment. If he could get his money for $4\frac{1}{2}\%$ he would be all right.

The plaintiffs say the income figures of better times are used but expenses lower than actual ones are taken. I do not so read Mr. Loeb's figures.

Mr. Horan's testimony in behalf of the plaintiff deeply impressed me. It was scientific, modern, thorough; and his deductions and conclusions seemed sound. But in the last analysis his plan was "to show the amount available for taxes and return on investment, after other expenses are paid, and then apportion it fairly between those two items". What is a fair apportionment is solely a matter of opinion. I think he gives too much to his client, the owner, and too little to the City.

This memorandum is already over-long, and I will bring it to a close, in spite of the fact that I have touched but lightly the main issues involved, and have not discussed many of the lesser ones. The Whitney Avenue property is governed by the same considerations, and the figures are not sufficiently different to change the result.

I have given careful consideration to the plaintiff's exhaustive brief and have nevertheless come to the conclusion not only that the plaintiff has not proven that the assessment is manifestly excessive, but that the defendant has proven it is manifestly fair.

Judgment is for the defendant in both cases.