[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of defendant, Zoning Board of Appeals of the City of Stamford, [ZBA] granting a special exception to Transcon Builders, Inc. [Transcon] the construction of a 120-bed nursing home facility to be known as Rippowam Health Care Center. Plaintiffs Linda M. Wilde a/k/a Linda M. Peters, John Peters, Paul C. Ferrara, Janet Ferrara Robert Davis, Edward Dieda, and Sylvann Parmele, appeal the ZBA's decision pursuant to Conn. Gen. Stat. 8-8.
The subject property is located at 947 Stillwater Road, CT Page 4518 Stamford and consists of approximately 4.75 acres and lies within an R-20 zone. That zone as allows for nursing homes by way of a special exception. See Zoning Regulations, Article III Section 4, AA 2.3. The cite contains a single family residence, detached garage, produce stand and tilled fields. It is known as Hettling's Farm and is bounded by the Rippowam River. It is characterized by upland slopes, regulated soils, and broad flood plain areas.
Prior to submitting its application to the ZBA, Transcon. obtained a permit from the Environmental Protection Board [EPB] to conduct a regulated activity in a wetland area. An appeal of EPB's decision entitled Linda Peters v. City of Stamford, D.N. CV89-010171S was taken to this court. That appeal was sustained by this court, (Flynn, J.) On September 12, 1990.
On June 9, 1989, Transcon submitted an application for a Special Exception, 100-89 to the ZBA to allow construction of the 120-bed nursing home pursuant to section 19 and Appendix A of the Zoning Regulations of the City of Stamford. On August, 19, a public hearing was conducted by the ZBA on Transcon's application for a special exception. At -the hearing, representatives of the applicant testified in support of the application and expense documentary evidence was submitted including traffic studies, impact studies, architectural drawings, and Certificate of Need Determination. Residents along Stillwater Road presented testimony and evidence in position to the application.
On October 25, 1989 the ZBA approved the application with six restrictions. Notice of the ZBA's decision was published in the Stamford Advocate on November, 1989. It is from this decision that the instant appeal arises.
At the hearing held in this appeal on June 12, 1990, plaintiffs placed certified copies of warranty deeds into evidence and presented testimony that plaintiffs Linda M. Wilde a/k/a Linda M. Peters, John Peters, Paul C. Ferrara and Janet Ferrara own property abutting the subject property at 947 Stillwater Road, Stamford, Connecticut. Also at the June 12, 1990 hearing, plaintiffs placed certified copies of warranty deeds of Sylvann Parmele and Edward Dieda and certified copy of a certificate of devise to Robert Davis into evidence and presented testimony that Sylvann Parmele, Edward Dieda and Robert Davis own property that is within a radius of one hundred feet of the property at 947 Stillwater Road. Based on that evidence and testimony, the court finds that all plaintiffs are statutorily aggrieved and are authorized to bring this action.
Plaintiffs argued at the June 12, 1990 hearing that if the CT Page 4519 appeal from the EPB's decision, Peters v. Stamford, CV89-010071S, is sustained, then any action by the ZBA is null and void. On October 2, 1990, the court (Flynn, J.), granted plaintiffs' motion to file supplemental briefs on this issue and gave defendants until October 24, 1990 to file reply briefs. In their supplemental brief plaintiffs argue that because the decision of the EPB has been declared null and void, there was no valid final decision or report for the ZBA to consider. Plaintiff conclude that the ZBA had neither jurisdiction nor statutory authority to grant Transcon's application for a special exception and the action of the ZBA is null and void.
Conn. Gen. Stat. 8-3c provided in part:
 (a) In an application for a special permit or special exception involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for a special permit or special exception.
 (b) The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for special permit or special exception, as provided in section 8-2, and on an application for a special exemption under section 8-2g. The commission shall not render decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall have due consideration to the report of the inland wetlands agency.
Id. (emphasis added) Section 8-2 states that zoning regulations may designate the zoning board of appeals as the body authorized to decide applications for special exceptions. Conn. Gen. Stat.8-2 (rev'd to 1989).
No case law has been found which construes the applicable language of section 8-3c(b). Case law was found pertaining to Conn. Gen. Stat. 8-26 which has similar language. In Frechette v. Town Planning and Zoning Commission, 4 CSCR 70 (December 1, 1988, Reilly, J.), plaintiffs appealed the denial of a subdivision application where the commission based its denial in CT Page 4520 part on the fact that the inland wetlands agency had not approved plaintiffs' application. The court reviewed the legislative history to determine the meaning of the phrase "due consideration" that is contained in Conn. Gen. Stat. 8-26.
In Frechette, the court held that provisions of Conn. Gen. Stat. 8-26, stating that "The commission shall not render a decision until the inland wetlands agency has submitted a report to such commission. In making the decision, the commission shall give sue consideration to the report or the inland wetlands agency" refers to the agency's final decision, not the decision of the court or appeal from an agency's final decision. In the instant action ZBA acted with a final decision of the EPB in hand from, the agency. Section 3-3c(b) refers to an agency's final decision and not the decision of the court on appeal from the agency's final decision. The ZBA give due consideration to the EPB's final decision is required by section8-3c(b) and the first fact that the decision was later overturned at the Superior Court level (and subsequently appealed to the Appellate Court) does not affect the record at the time the ZBA considered the report. The sustaining of the plaintiffs' appeal to the EPB was not on the merits of the Board's report but rather, on the notice of the hearing. It is possible that Transcon may reapply for a new EPB permit which may be granted in the future. The ZBA had jurisdiction and statutory authority to render a decision on Transcon's application. The commission was required by Section 8-3c
of the statutes to render its decision within sixty-five days. It properly considered the wetland agency's final report and thereby satisfied the statute requiring it to do so even though the Superior Court later sustained the appeal of the wetland agency's decision.
This court's scope of review in this appeal is limited. The trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 573 (1988). "[T]he court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion." Id. The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). The burden of proof to demonstrate that the agency acted arbitrarily or illegally is upon the plaintiff. Id. at 266.
The court will first turn to a discussion as to whether the ZBA acted illegally in finding that the proposed use fits the definition of a nursing home as defined in the Stamford Zoning Regulations.
Plaintiffs argue that because Transcon's proposed use exceeds the definition of a nursing home as set forth in the CT Page 4521 Zoning Regulations it does not constitute an authorized special exception in an R-20 zone; the record indicates that the proposed health care center will provide medical care and treatment beyond the scope of a nursing home and more in the nature of a hospital, clinic or sanitarium; since the proposed facility exceeds the permissible scope of a nursing home as defined by the zoning regulations, the ZBA had no authority to grant the special permit and its action is illegal, null and void.
 When considering an application for a special permit, the board acts in an administrative capacity. (citation omitted). . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. (citations omitted). The proposed user, however, must satisfy standards set forth in the zoning regulations themselves as well as the `condition necessary to protect the public health, safety, convenience and property values.' (citations omitted). Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. (citations omitted)
A.P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182,184-85 (1974).
Article II, Section 3, paragraph 69 of the Zoning Regulations of the City of Stamford defines nursing homes as:
 NURSING HOMES: Convalescent or rest homes, not including hospitals, clinics or sanitariums and not institutions of penal or correctional nature, nor for the care of insane or feebleminded patients and provided that any building so permitted shall be located not less than forty (40') feet from any street or lot line and be appropriately screened and landscaped.
"Whether on the evidence at the hearing the proposed use . . . qualified under the legal meaning of the phrase "nursing home" is a question of fact to be determined be by the [board], CT Page 4522 subject to a review by the court of the reasonableness of its conclusion." Oliver v. Zoning Commission, 31 Conn. Sup. 197,202-03 (C.P. 1974).
At the August, 1989 public hearings the Board heard testimony by Sandra Yerks, administrator of Greenwich Woods, another nursing home operated by Transcon, who described the type of health care that the centers provide:
 What we do is provide daily care. We don't provide hospital care. We make sure that these people are on a skilled level, are maintained physically and mentally. [sic] We do provide 24 hour nursing service and we do have a medical director who visits the facility once a week. We do not provide any special services. There is no IV therapies that go on. . . . Basically we are taking care of the frail elderly who cannot he cared for at home.
Also at the August 9, 1989 hearing, test iron was presented that Transcon had obtained a Certificate of Need from the Connecticut Commission on Hospitals and Health Care to construct a 120-bed nursing home on the proposed site.
Given the provisions of Article II, Section 3, paragraph 69 of the zoning regulations and the evidence before it, the Board could reasonably have concluded that the proposed convalescent home was a permitted use and not excluded by virtue of being a hospital, clinic or sanatorium, although it might offer some services as a convalescent home that are also offered at these other finds of excluded facilities. To the extent that the ordinance excludes institutions "for the care of insane or feebleminded extents" and the record indicated mental are could be provided, the court believes that a reasonable interpretation of those exclusions would not bar the facility proposed. The term "feebleminded" is dated and insensitive but has been used to describe mentally retarded persons or those suffering diminution of their mental faculties by virtue of senility. As used in the ordinance the exclusions of these two categories of uses imply institutions devoted solely to the categories of either "insane or feebleminded persons". There is nothing in the record to warrant a finding that the permit sought was for such a facility. The fact that some patients cared for by the applicant might suffer from mental retardation or mental disability would not warrant denial of the application. This interpretation is consistent with state statutory law, particular 46a-64(a)(1) and (2) which prohibit denial of full and equal accommodation in any place or establishment which CT Page 4523 caters or offers its services or facilities to the general public to any person on account of mental retardation or mental disability. This interpretation is also consistent with common sense. Time marches on and the shadows lengthen for all of us. In life's twilight, mental acuity can fade from one hour to another. The court believes that those who first adopted this provision did not intend, nor does the ordinance require that the physically ill be exiled from a convalescent facility at that part of the day or month when they lack acumen.
Based on substantial evidence regarding the nature and purpose of the facility, the ZBA could reasonably find that Transcon's proposed use complies with the definition of a nursing home set forth in the Zoning Regulations of the City of Stamford. See Callahan v. Zoning Board of Appeals, D.N. CV88-0092018 S, J.D. of Stamford/Norwalk at Stamford, Memorandum of Decision January 23, 1989, Cocco, J. The plaintiffs have failed to establish that the ZBA acted illegally.
The court will now turn to the issue whether the ZBA acted illegally in finding that the proposed facility complies with all building and parking requirements and conditions under the zoning regulations.
Plaintiffs argue that the proposed nursing home does not comply with the Stamford Zoning Regulations' maximum height requirements in an R-20 zone. Plaintiffs argue that the proposed nursing home will be three stories high and that the structure will exceed thirty feet on the north east and south sides. Plaintiffs also argue that the method used by the ZBA to determine the average level of the finished around surface has arbitrary, capricious and erroneous because there was no attempt to height the ten location points to arrive at an average building height.
Article II, section 4, paragraph 2.4 d. provides that the maximum building height in an R-20 zone is "2 1/2 stories, not to exceed. 30 ft." Article II, section 3A, paragraph 16b of the Zoning Regulations of the City of Stamford defines the height of a building as follows:
 The vertical distance to the level of the highest point of the roof surface if the roof is flat or inclines not more than one inch (1") vertical in one-foot horizontal, or the mean level between the eaves and the highest points of the roof if the roof is of any other type, measured as follows: CT Page 4524
 If the building is more than ten feet (10') from the front property line, measured from the average level of the finished ground surface adjacent to the exterior walls of the building. Where the finished ground surface is made by filling, the level of such finished ground surface for the purpose of this definition shall not be deemed to be more than three (3) feet above the established grade of the curb.
Article II, section 3A, paragraph 95 defines story as follows:
 That portion of a building above the basement between any floor and the ceiling or roof next above it. A story, the ceiling of which is five feet (5') or more above the established ride or above the average level of the ground along the front wall shall constitute a full story. A "half-story" is any space under a gable, hip or gambrel roof, the floor of which is not more than two feet (2') below the plate.
The building line is set back 40 feet from the front property line in the instant case. The average height is 29.87 feet. The Zoning Enforcement Officer approved the height requirements and submitted them for approval by the ZBA. The Zoning Regulations do not require, as plaintiffs contend, that the ten location point used to arrive at an average building height be weighed by and formula. The Regulations require a simple "average level." The record discloses substantial evidence that the ZBA in interpreting its regulations could reasonably find that the proposed facility complies with the height requirements of the zoning regulations because the average height is 29.87 feet, and further, that the application did not approve an excessive number of stories.
Plaintiffs also argue that Transcon has failed to meet the minimum parking requirements. Article IV, section 12.D.5 provides that "parking space for one (1) vehicle shall be provided for every two (2) beds, plus parking space for one (1) vehicle shall be provided per doctor in Convalescent Hospitals, Rest Homes or comparable institutions . . ." The record discloses that there are 63 parking spaces for the proposed 120-bed nursing home. The Zoning Enforcement Officer approved the parking layout. There was testimony that a medical director would visit the facility once a week. The record reflects that the ZBA could reasonably find that Transcon complies with the parking CT Page 4525 requirements of the zoning regulations. Sixty-three spaces are sufficient to provide one space for every two beds and the director who is the only doctor affiliated with the facility. The fact that parking will be located underground violates no provision of the parking requirements of the ordinance. The plaintiffs have failed to establish that the ZBA acted illegally regards to both the building height and parking requirements.
Plaintiffs next contend that total building coverage exceeds the 15% building coverage restriction in an R-20 zone. No evidence in the record was found showing that this argument was made to the ZBA. Claims not presented at the public hearing can not be raised to the superior court on appeal. Valley View Convalescent home Inc. v. Commission on Hospitals, 32 Conn. Sup. 300,302 (1975). This claim is not appropriately raised before the court.
Finally, the court must determine whether the ZBA acted illegally, arbitrarily or capriciously in finding that the proposed facility is in accord with the public convenience and welfare.
Plaintiffs argue that there is no substantial evidence that the ZBA reasonably considered the increased traffic patterns, and the impact upon the neighboring uses and surrounding area that may result from the proposed facility.
Article V, section 19, paragraph 3.2a provides that:
 a. Special Exceptions shall be granted by the reviewing board only upon a finding that the proposed use or structure or the proposed extension or alteration of an existing use or structure is on accord with the public convenience and welfare after taking into account, where appropriate:
 (1) the location and nature of the proposed site including its site and configuration, the proposed size, scale and arrangement of structures, drives and parking areas and the proximity of existing dwellings and other structures.
 (2) the nature and intensity of the proposed use in relation to its site and the surrounding area. Operations in connection with special exception. uses shall not be injurious to the neighborhood, shall be in harmony with the general purpose and intent of these regulations, and shall not be more CT Page 4526 objectionable to nearby properties by reason of noise, fumes, vibration, artificial lighting or other potential disturbances to the health, safety or peaceful enjoyment of property. than the public necessity demands.
 (3) the recruiting traffic patterns, the adequacy of existing streets to accommodate the traffic associated with the proposed use, the adequacy, of proposed of street parking and loading, and the extent to which proposed driveways may cause a safety hazard, or traffic nuisance.
 (4) the nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future development.
 (5) the Master Plan of the City of Stamford and all statements of the purpose and intent of these regulations.
In rendering its decision to approve Transcon's application for a special exception, the ZBA found that the proposed use was in accord with the public convenience and welfare after taking into account to resulting traffic pattern and the impact on the neighboring area. Transcon submitted traffic study prepared by Barkan Mess Associates, Inc. and presented testimony by its president Benedict G. Barkan it the August 9, 1989 hearing in support of its application. The record also reflects that residents in the surrounding area submitted letters and presented oral testimony at the August 9, 1989 hearing regarding the increased traffic due to the proposed nursing home. In addition the Stamford Department of Traffic and Parking sent a memo to the ZBA commenting on the traffic. Transcon also submitted a neighborhood Impact Study prepared by Christopher G. Rocque of Edward F. Heberger 
Associates, Inc. This study was supplemented by testimony, of Christopher G. Rocque at the public hearing. Christopher G. Rocque concluded that there would be no adverse impact on the neighborhood. At the public hearing residents raised questions and concerns regarding noise and air pollution relating to the exhaust fumes from the underground garage.
The question on appeal is whether the evidence in the record reasonably supports the agency's action, and the court cannot substitute its judgment as to the weight of the evidence for that of the agency. Housatonic Terminal Corp. v. Planning and Zoning Board, 168 Conn. 304, 306 (1975). The ZBA had substantial evidence before it when it found that the proposed CT Page 4527 facility was in accord with the public convenience and welfare.
 Furthermore, the application was approved with the following six conditions:
 1. the applicant must adhere to the approved plans which have been signed by Raymond D. Sanborne, Chairman of the Zoning Board of Appeals, and Leonard DiPreta, Zoning Enforcement Officer. Said plans are on file in the office of the Zoning Board of Appeals and area referred to as Sheets 1 through 12 (building and site plans) and Sheets 1 and 2 (landscape plans). 2. Refuse pickup shall be between 9 AM and 6 PM only. 3. There shall be no refuse compacting machines outside of the building. 4. Any mechanical equipment, including air conditioning and ventilation fans, shall be inaudible at the property lines. 5. The exhaust fans in the underground parking garage shall be ducted under the driveway and the outlet shall be beyond the retaining wall as noted on Sheet 8 of the approved plans. 6. In the northerly area designated. for 14-16 ft. high White Pines, the applicant shall provide 14-16 ft. high Norway Spruce and/or Serbian Spruce, and additional evergreen plantings that may be required to screen this area from the northerly neighbor. All plantings designated on the approved landscape plan shall be perpetually maintained or replaced with suitable substances.
These conditions reasonably address the co co concerns of the neighborhood.
The ZBA gave consideration to both sides of the traffic issue and the impact on the surrounding area when it rendered its decision. Plaintiffs have failed to establish that it acted illegally, arbitrarily or abused its discretion that the proposed facility was in accord with the convenience and welfare.
For all of these reasons, the appeal is dismissed.
FLYNN, J.